## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ISRAEL RUIZ, | |
| Plaintiff, | Case No. 22-cv-07171 |
| v. | |
| J.B. PRITZKER, ROB JEFFREYS, EDITH CRIGLER, and KWAME RAOUL, | Judge John Robert Blakey |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this action brought under 42 U.S.C. § 1983, Plaintiff Israel Ruiz, an individual presently incarcerated at Dixon Correctional Center, sues Defendants, Illinois Governor J.B. Pritzker, Illinois Department of Corrections ("IDOC") Director Latoya Hughes,[1] IDOC Chair Donald Shelton, and Illinois Attorney General Kwame Raoul, in their official capacities, for enacting, enforcing, and implementing Public Act 100-1182.[2] [24]. Plaintiff alleges that the Act's prospective-only application violates his rights under the Fourteenth Amendment's Equal Protection Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishment Clause (Count II).

Defendants move to dismiss the Complaint. [25]. For the reasons explained below, the Court grants Defendants' motion to dismiss.

---

[1] This Court automatically substitutes Acting Director Latoya Hughes for Former Director Rob Jeffreys, and Acting IDOC Chair Donald Shelton for Former Chair Edith Crigler, pursuant to Federal Rule of Civil Procedure 25(d).

[2] 730 Ill. Comp. Stat. 5/5-4/5-115 (2023).

I.      **Factual Background**[3]

This case arises from the enactment of Public Act 100-1182, an amendment to the Illinois Unified Code of Corrections that establishes a new parole system for certain youth offenders who were sentenced on or after June 1, 2019. *Id.* ¶ 24; 730 Ill. Comp. Stat. 5/5-4/5-115[4] ("the Act").   The Act provides, in relevant part, that a person convicted of first-degree murder, committed when they were under 21 years of age, shall be eligible for parole review after serving 20 years or more of his or her sentence.  *Id.* ¶ 25; *see* 730 Ill. Comp Stat. 5/5-4/5-115(b).  Governor Pritzker signed the Act into law on April 1, 2019; it became effective June 1, 2019, and applies only to offenders sentenced on or after that date. *Id.* ¶¶ 2, 23.

Plaintiff was convicted of a murder that occurred on November 7, 1998, when he was 18 years old; he was sentenced on June 29, 2000, to 40 years in prison without the possibility of parole and remains incarcerated to this day at Dixon Correctional Center.  *Id.* ¶¶ 12, 20–22.  If the Act applied retrospectively, Plaintiff would be eligible for parole review.  *Id* ¶ 4.

The Complaint alleges that the impetus for the Act arose from the Illinois General Assembly's recognition about the brain maturation of youth offenders.  *See id.* ¶ 31.  For example, when the Act was debated in the Illinois Senate, Senator Don Harmon stated, "the science of brain development suggests that young people don't reach the age of fully formed brains at eighteen or at twenty-one." *Id.* ¶ 29.  Plaintiff

---

[3] The Court draws the following facts from Plaintiffs' Amended Complaint, [24], which it takes as true at this stage. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

[4] The Act was formerly 730 Ill. Comp. Stat. 5/5-4.5-110.

alleges that this scientific development regarding brain maturity applies no differently to offenders who were sentenced before June 1, 2019, yet the Act creates "two different parole systems for individuals convicted or similar or different crimes solely based on their date of sentencing." *Id.* ¶¶ 35, 38. As a result, Plaintiff sues Defendants seeking an Order declaring that the Act's prospective-only application violates the Equal Protection Clause of the Fourteenth Amendment (Count I) and the Cruel and Unusual Punishment Clause of the Eighth Amendment (Count II), enjoining enforcement of the Act on a prospective only basis, and requiring Defendants to enforce the Act retroactively. *Id.* ¶¶ 53, 62.

## I.     Legal Standard

Under Federal Rule Civil Procedure 12(b)(6) a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). When considering a motion to dismiss, the Court views the complaint in the light most favorable to the Plaintiff, accepts as true all well-pleaded allegations, and draws all inferences in favor of the Plaintiff. *Roe v. Dettelbach*, 59 F.4th 255, 262 (7th Cir. 2023).

To survive a motion to dismiss, a complaint must provide the defendant with fair notice of the claim and its bases and state the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, a claim must provide factual statements that are plausible on their face, and allow the Court "to draw a reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.  Analysis

Defendants move to dismiss all claims against them for failure to state a claim. [4].  As a threshold matter, Defendants argue that the Eleventh Amendment immunizes Governor Pritzker, Attorney General Raoul, and Acting Director Hughes from suit. *Id.*[5]  The Court will first address whether the Eleventh Amendment bars the claims against these Defendants, and then turn to the sufficiency of the allegations to state a claim under the Fourteenth and Eighth Amendments.

### A. Sovereign Immunity

State officials are generally immune from suit in their official capacities under the Eleventh Amendment. *Whole Woman's Health, et al., v. Jackson*, 595 U.S. 30, 39 (2021) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).  Under *Ex Parte Young*, however, a plaintiff may sue state officials to enjoin the enforcement of an allegedly unconstitutional statute where the official has "some connection with the enforcement of the act"; otherwise, the suit "is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  209 U.S. 123, 157, 159–61 (1908).  To survive dismissal then, Plaintiff must plausibly allege that "the named state official plays some role in enforcing the statute." *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018).   Although it need not be exclusive, the official must have some enforcement power—a party "whose prospective action would

---

[5] IDOC Chair Donald Shelton does not claim immunity under the Eleventh Amendment.

violate federal law." *See Bowling v. Pence*, 39 F.Supp.3d 1025, 1029 (S.D. Ind. 2014) (citing *Ameritech Corp. v. McCann*, 297 F.3d 582, 585-86 (7th Cir. 2002)); *see also Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 915 (E.D. Wis. 2002) ("Essentially, plaintiffs wishing to file suit under *Ex Parte Young* must make sure that they name the right defendant, meaning the official that state law empowers to enforce the challenged statute."). To determine whether the named official has a sufficient connection to enforcement, the Court looks to the official's "duties and powers under state law." *See Deida*, 192 F.Supp.2d at 914 (citing *Sherman v. Cmty. Consol. Sch. Dist. 21,* 980 F.2d 437, 441 (7th Cir. 1992)).

Here, Defendants contend that Governor Pritzker, Attorney General Raoul, and Acting Director Hughes lack the requisite connection to the Act's enforcement and are therefore immune from suit under the Eleventh Amendment. [26] at 3. The Court considers each Defendant in turn.

### 1. Governor Pritzker

Plaintiff sues Governor Pritzer based upon his role within the executive branch. *See* [29] at 6. The Complaint alleges that the IDOC "is an agency within the executive branch of the government of Illinois" and therefore, "Governor Pritzker has control and oversight authority over every aspect of the IDOC, including *its* implementation and enforcement of various aspects of the Act." [24] ¶15 (emphasis added). Plaintiff alleges no other connection to enforcement. *See id.*

But governors "do not automatically satisfy the 'some connection' standard" simply by virtue of their position within the executive branch. *See Eason v. Pritzer*

5

No. 18-CV-2553, 2020 WL 6781794, at * 9 (N.D. Ill. Nov. 18, 2020) (*citing Young*, 209
U.S. at 157); *see also Illinois League of Advocs. for the Developmentally, Disabled v.*
*Quinn*, No. 13 C 1300, 2013 WL 5548929, at *3–4 (N.D. Ill. Oct. 8, 2013) ("A theory of
liability predicated on a governor's general obligations as the executive of the State
cannot avoid the consequences of the Eleventh Amendment.") (collecting cases).
Indeed, the court explained in *Ex Parte Young* that if governors could be sued based
simply upon their executive role, the exception would swallow the rule:

> If, because they were law officers of the state, a case could be made for
> the purpose of testing the constitutionality of the statute, by an
> injunction suit brought against them, then the constitutionality of every
> act passed by the legislature could be tested by a suit against the
> governor and the attorney general, based upon the theory that the
> former, as the executive of the state, was, in a general sense, charged
> with the execution of all its laws, and the latter, as attorney general,
> might represent the state in litigation involving the enforcement of its
> statutes.

*Eason*, 2020 WL 6781794, at *8 (citing *Young*, 209 U.S. at 157).

Instead, to fall within the exception, and obtain prospective injunctive relief,
Plaintiff must plausibly allege that the Governor is *specifically* involved in enforcing
the Act. *See Holcomb*, 883 F.3d at 976 (rejecting *Ex Parte Young* exception where
governor was not "specifically charged with a duty to enforce" the challenged name-
change statute, and "had not taken any action to enforce" the statute, and noting the
"mere fact that a governor is under a general duty to enforce state laws does not make
him a proper defendant in every action attacking the constitutionality of a state
statute"); *H.O.P.E., Inc. v. Eden Mgmt. LLC*, 2017 WL 4339824, at *8–9 (N.D. Ill.
2017) (holding governor had "some connection" to enforcement of a program where

the "governor's office issued notices" concerning a state program); *Love v. Pence*, 47 F. Supp.3d 805, 808–09 (S.D. Ind. 2014) (holding governor had "some connection" to enforcing a state law where the governor issued "*instructions* to state agencies" on compliance) (emphasis in original).

*Eason* remains particularly instructive. There, the plaintiff, a partially deaf prisoner in the custody of the IDOC, brought an *Ex Parte Young* action against Governor Pritzer, and others, alleging that the governor violated his constitutional rights for failing to accommodate his disability. *Eason*, 2020 WL 6781794, at *9. The court held that the Eleventh Amendment barred suit against Governor Pritzker because the plaintiff did not allege "any meaningful connection" between the governor and the challenged prison policies for disabled inmates, alleging only that the Governor has "oversight responsibility" over all state agencies and employees. *Id.* This single allegation revealed what the plaintiff was "trying to achieve—an injunction against the Governor because he's the Governor," the "top official in the executive branch in state government." *Id.*

Here too, Plaintiff has failed to allege any meaningful connection between the Governor and the alleged enforcement of the Act, beyond a single paragraph stating that the Governor has "control and oversight authority" because the IDOC is "an agency within the executive branch." *See* [24] ¶ 15; *see also* [29] at 6 ("Defendant Pritzker is alleged to have a specific connection to enforcement of the Parole Act through his control and oversight" of the IDOC). Simply overseeing the IDOC— which, along with the Parole Review Board, actually enforces and implements the

7

Act—remains insufficient under *Ex Parte Young*. Therefore, the Eleventh Amendment thus bars this suit against Defendant Pritzker, and this Court dismisses Plaintiff's claims against him.

### 2. Attorney General Raoul

Plaintiff also sues Attorney General Raoul based upon his executive branch position. Plaintiff alleges that as the Attorney General of the State of Illinois, Defendant Raoul is "responsible for enforcing the laws of the State of Illinois including the Act." *See* [24] ¶ 18.

The principles articulated above apply with equal force to the Illinois Attorney General. The Seventh Circuit has held that an attorney general's broad power to enforce state law is insufficient, on its own, to make him subject to suit. *See Sherman*, 980 F.2d at 441. Attorney General Raoul cannot be sued solely based upon his "duty to support the constitutionality of a state statute." *Holcomb*, 883 F.3d at 976 (citing *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976)).

If the Act contained an enforcement provision or penalty clause that implicated the attorney general's power to enforce the Act, Plaintiff's claim might fall within *Ex Parte Young*. For example, in *Entm't Software Ass'n v. Blagojevich,* the Seventh Circuit held that the *Ex Parte Young* exception applied where the challenged statute included a penalty provision enabling the attorney general to prosecute under the statute, and the attorney general conceded he had power to enforce the statute concurrent with the State's Attorney. 469 F.3d 651, 645 (7th Cir. 2006). *See also Heabler v. Madigan,* No. 12 C 6193, 2013 WL 5405679, at *4 (N.D. Ill. Sept. 24, 2013)

(noting that if statute's penalty provisions implicated attorney general's concurrent power to enforce Illinois law, he might be a proper defendant).

But the Act here contains no such provision, and Plaintiff does not allege anything in particular with regard to enforcement. As a result, any attempt to bring his claim within the parameters of *Ex Parte Young* fails. *See Holcomb*, 993 F.3d at 977 (holding Eleventh Amendment barred suit against Indiana Attorney General where Attorney General had not "threatened to do anything and could not do anything to prosecute a violation of the challenge statute" because there were no criminal penalties for violating same).

In his Response, Plaintiff does not refute Defendants' contention that Attorney General Raoul cannot be sued solely based upon his responsibility to enforce the laws of the State of Illinois. *See* [29] at 6. Plaintiff instead argues that Attorney General Raoul's connection to enforcement is based upon his "specific role in directing and counseling enforcement of the Act as legal counsel to the IDOC." *Id.* But as noted above, the fact that the "attorney general, might represent the state in litigation involving the enforcement of its statutes" is not a sufficient nexus to enforcement to satisfy the "some connection" standard. *See, e.g., Eason*, 2020 WL 6781794, at *8 (citing *Young,* 209 U.S. at 157). As Defendants correctly note, although Attorney General Raoul, in his role as a legal representative to the IDOC, may be tasked with supporting the constitutionality of the Act, that is distinct from enforcing the Act. *See* [26] at 4–5.

9

Fatal to Plaintiff's claim against Attorney General Raoul, the Complaint contains no allegations from which this Court can plausibly infer that he has any specific power at all to enforce the Act. *See Holcomb*, 993 F.3d at 977 (citing *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute.")). This Court's "ultimate inquiry" is whether Attorney General Raoul's connection to the enforcement of the Act is "sufficiently intimate to meet the requirements of *Ex Parte Young*." *Id.* (citing *Shell Oil Co. v. Noel*, 608 F.2d 208, 210 (1st Cir. 1979)). Based upon the Complaint's allegations, the answer to that inquiry is "no." Accordingly, the Eleventh Amendment bars Plaintiff's suit against Attorney General Raoul, and this Court dismisses Plaintiff's claims against him.

### 3. Acting Director Hughes

Plaintiff's allegations with respect to Acting Director Hughes are materially different. The Complaint alleges that IDOC Director Hughes and the IDOC "implement and enforce various aspects of the Act." [24] ¶ 17. This is confirmed by the language of the Act itself; the Act specifies that a IDOC representative "shall meet with the eligible person and provide the inmate information about the parole hearing process and personalized recommendations for the inmate regarding his or her work assignments, rehabilitative programs, and institutional behavior." 730 Ill. Comp. Stat. 5/5-4.5-115(d). Thus, the Act specifically tasks the IDOC, and by direct implication its Director, with implementing and enforcing the Act's provisions.

Therefore, in contrast with the allegations concerning Defendants Pritzker and Raoul, the Complaint does sufficiently allege that Hughes, as the Acting Director of the IDOC, has "some connection" to the enforcement of the Act. *Young*, 209 U.S. at 159. Although Defendants argue that Hughes plays no role in "determining who is eligible for parole," [26] at 5, the Complaint plausibly alleges that Hughes plays a role in enforcing the Act, *see* [24] ¶ 16, and the Court accepts the allegations as true at this stage. As a result, the *Ex Parte Young* doctrine applies to Acting Director Hughes, and the Eleventh Amendment does not bar this suit against him.[6]

Having dismissed Plaintiff's claims against Defendants Pritzker and Raoul, the Court will now address the sufficiency of the allegations against the remaining defendants, Acting Director Hughes and IDOC Chair Donald Shelton.

**B. Equal Protection Claim (Count I)**

The Equal Protection Clause provides that all people who are "similarly situated should be treated alike." *West v. Radtke*, 48 F.4th 836, 851 (7th Cir. 2022) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Where a law's classification involves neither a fundamental right nor suspect classification, it must only withstand rational basis review. *See Armour v. City of Indianapolis*, 566

---

[6] In addition to injunctive relief, Plaintiff also requests a declaratory judgment that the Act "only prospectively violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment" and "only prospectively constitutes cruel and unusual punishment, thereby violating Plaintiffs' rights under the Eighth Amendment." [24] at 9. The Seventh Circuit has held that "declaratory relief should not be awarded where the eleventh amendment bars an award of monetary or injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 883 (7th Cir. 2012) (quoting *MSA Realty Corp. v. Ill.*, 990 F.2d 288, 295 (7th Cir. 1993) (internal quotations omitted)). Accordingly, Plaintiff's request for a declaratory judgment can only survive to the extent that it hinges upon Plaintiff's claims against Defendants Hughes and Shelton, which are not barred by the Eleventh Amendment.

U.S. 673, 680 (2012). The parties agree that the Act is subject to this deferential standard. [26] at 6; [27] at 9.

Under rational basis review, an act is presumed constitutional unless it lacks a rational basis. *Armour,* 566 U.S. at 680. A rational basis exists if "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Id.* at 680 (citing *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)). The government's classification "will not be set aside if any state of facts reasonably may be conceived to justify it." *See Wroblewski v. City of Washburn,* 965 F.2d 452, 459–60 (7th Cir. 1992); *see also FCC v. Beach Commc'ns., Inc.* 508 U.S. 307, 313 (1993) (holding rational basis exists if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification").

To survive a motion to dismiss, Plaintiff "must allege facts to overcome the presumption of rationality that applies to government classifications." *See Flying J Inc. v. City of New Haven*, 549 F.3d 538 (7th Cir. 2008) (quoting *Wroblewski,* 965 F.2d at 459–60). Plaintiff has not done so.

For their part, Defendants assert that a rational basis for the disparate treatment exists because "applying the Act retroactively would require providing parole hearings for any individual who was under the age of 21 at the time of the offense and convicted of first-degree murder at any time prior to June 1, 2019," which "would place a significant burden on the courts and prison system." [26] at 8. Plaintiff counters that no rational basis exists for treating youth offenders differently based solely on the date they were sentenced, and any "burden argument is

nonsensical" because the burden of housing an inmate would outweigh any burden imposed by the need for additional parole hearings. [29] at 11.[7] The Seventh Circuit rejected similar arguments in *United States v. Speed,* 656 F.3d 714, 720 (7th Cir. 2011), and *United States v. Sanders,* 909 F.3d 895, 905 (7th Cir. 2018).

In *Speed,* the court reviewed a defendant's equal protection challenge to the Fair Sentencing Act of 2010 ("FSA"), Pub.L. No. 111-220, 124 Stat. 2372. Had the FSA applied retroactively, the defendant would not have received a mandatory life sentence, but rather would have been subject to a mandatory sentence of ten years. *Id.* at 719. Applying rational basis review, the Court explained, that this stark discrepancy was "plainly rational" because "discrepancies among persons who committed similar crimes are inescapable whenever Congress raises or lowers the penalties for an offense." *Id.* at 720 (citing *United States v. Goncalves*, 642 F.3d 245, 253 (1st Cir. 2011)).

Subsequently, in *Sanders*, the plaintiff challenged California's Proposition 47, which applied only prospectively, under the Equal Protection Clause. 909 F.3d at 905. Like the plaintiff here, Sanders argued that the statute at issue lacked a rational basis because it arbitrarily created "two classes" of offenders solely based upon when the individual committed their predicate offenses. *Id.* Once again, the court found that distinction rational based upon the reasoning in *Speed,* explaining, "whenever a

---

[7] Plaintiff relies on *People v. Metlock*, in which the Illinois Court of Appeals indicated in dicta that the Act lacks a rational basis for the prospective only application. No. 1-17-0946, 2021 WL 1206156, at *11 (Ill. App. Ct. Mar. 30, 2021). But the same court in *People v. Profit* found a rational basis for prospective only application of the Act and rejected the rationale in *Metlock* as dicta. 218 N.E.3d 495, 504–05 (Ill. App. Ct. 2023). As explained below, this Court is persuaded by the thoughtful analysis in *Profit*, 218 N.E.3d at 504.

sentencing statute is amended, 'someone, in the end, will always be left behind to live with the earlier, harsher penalty.'" *Id.* at 905–06 (citing *Speed*, 656 F.3d at 720).

This Court remains bound by the Seventh Circuit's thoughtful reasoning in *Speed* and *Sanders*, and Plaintiff has failed to allege facts to "overcome the presumption of rationality" applicable to the Act. *See Wroblewski*, 965 F.2d at 459–60. While Plaintiff may find it "nonsensical" to draw the line where Act has, it is plainly rational, arguably necessary in many cases, for the legislature to limit the reach of its laws when it lowers the penalties of an offense. *See Speed,* 656 F.3d at 720.

Furthermore, as the Illinois Court of Appeals recently held, applying the Act only prospectively serves an additional interest: to avoid "disturbing the victims whose offenders have already been imprisoned." *People v. Profit*, 218 N.E.3d 495, 505 (Ill. App. Ct. 2023). Accordingly, a rational basis exists for the disparity in treatment Plaintiff challenges. Therefore, the Court grants the Defendants' request to dismiss Count I.

### C. Cruel and Unusual Punishment Claim (Count II)

In Count II, Plaintiff alleges that the State's refusal to grant him the parole eligibility opportunities provided by the Act violates his right to be free from cruel and unusual punishment under the Eighth Amendment. [24] ¶ 58. The Eighth Amendment's Cruel and Unusual Punishments Clause contains a "narrow proportionality principle" applicable to noncapital sentences, which forbids sentences that are "grossly disproportionate to the crime committed." *United States v. Castro-*

14

*Aguirre*, 983 F.3d 927, 942 (7th Cir. 2020) (citing *United States v. Nagel*, 559 F.3d 756, 759 (7th Cir. 2009)).

To determine the proportionality of a sentence, courts consider: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Castro-Aguirre*, 983 F.3d at 942 (citing *Nagel*, 559 F.3d at 762). The Supreme Court has stated that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" and thus penalties must be gauged in light of "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citations omitted).

### 1. The change in the availability of parole review does not render Plaintiff's sentence cruel and unusual.

Plaintiff argues that the purpose of the Eighth Amendment is to "forbid arbitrary and discriminatory penalties of a severe nature," and thus the Act violates the cruel and unusual punishment clause "by imposing an arbitrary punishment based solely on sentencing date," that is, a "harsher, longer prison sentence." [29] at 13 (citing *Furman v. Georgia*, 408 U.S. 238, 242 (1972)).

As above, the Seventh Circuit has already rejected this argument. *See Speed*, 656 F.3d at 720. In *Speed,* the defendant argued that the imposition of a mandatory life sentence for his crime in light of the enactment of the FSA constituted "cruel and unusual punishment." *Id.* He contended that the enactment of the FSA demonstrates that "society's 'standards of decency' have evolved, such that his

15

mandatory life sentence for such a small amount of crack (less than a five-pound bag of flour), imposed under the old statutory scheme, is now cruel and unusual." *Id.* The court flatly rejected that argument, explaining that "Congress's amendment to the statutory penalties does not transform the preexisting penalty scheme into a cruel and unusual one." *Id.* So too here; the fact that the legislature has amended the sentencing laws to increase the availability of parole review for juveniles does not render Plaintiff's sentence cruel and unusual.

Indeed, if this Court were to accept Plaintiff's challenge to the Act's prospective only application, "every non-retroactive change in criminal penalties would risk running afoul of the Eighth Amendment merely because those defendants sentenced before the change faced different penalties than those sentenced after the legislative change." *United States v. Waite*, 12 F.4th 204, 215 (2d Cir. 2021), *vacated on other grounds,* 142 S.Ct. 2864 (2022) (rejecting argument that passage of new statute lessening penalties applicable to crime suggests pre-enactment sentences for the same crime violate cruel and unusual punishments clause). The Eighth Amendment "is not a ratchet that makes a harsher system of penalties unconstitutional the moment a more lenient one is adopted, a theory that would have the perverse effect of discouraging lawmakers from *ever* lowering criminal sentences." *United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013).

**2.  Plaintiff's 40-year sentence does not violate *Miller* or its progeny.**

In their opening brief, Defendants posit that Plaintiff seeks to proceed under *Miller v. Alabama*, 567 U.S. 460, 479 (2012), which held that the imposition of a life

without parole sentence for juveniles violates the Eighth Amendment unless the court considers "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." [26] at 8–9. They then argue that *Miller* remains inapplicable, because Plaintiff did not receive a life sentence. *Id.*

Plaintiff did not receive a life sentence. And, to the extent Plaintiff seeks to allege that he received a "de facto" life sentence in violation of the Eighth Amendment, his claim fails. [8] In *McKinley v. Butler*, the Seventh Circuit held that *Miller* may also apply to "de facto" life sentences, sentences where a defendant, even if not technically sentenced to life, has no possibility for life outside of prison. 809 F.3d 908, 911 (7th Cir. 2016).

But *Miller* does not impose a categorical constitutional ban on sentencing juveniles to life without parole; instead, it requires that the defendant's status as a juvenile offender be considered by the sentencing judge before imposing a life sentence, and Plaintiff does not contend that his sentencing judge failed to consider his juvenile status when sentencing him for murdering his victim. *See, e.g., Mitchell v. Greene*, No. 18-cv-04317, 2021 WL 1998237, at *18–22 (N.D. Ill. May 18, 2021)

---

[8] Plaintiff acknowledges in his Response that the Complaint does not allege an Eighth Amendment claim based upon the theory that his sentence is a de facto life sentence, [29] at 12, but he nonetheless argues that his sentence does constitute a de facto life sentence, [24] ¶¶ 19–22, 41. In responding to a motion to dismiss, a plaintiff "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 471 (7th Cir. 2020) (citation omitted). But a plaintiff may not use his response brief to amend his complaint, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Although Plaintiff's Response certainly toes this line, the Court will treat the Complaint's allegation regarding the life expectancy of incarcerated youth, [24] ¶ 41, as support for Plaintiff's claim that his sentence violates the Eighth Amendment's Cruel and Unusual Punishment Clause under *Miller* and its progeny.

(citing *Miller*, 567 U.S. at 479, 483) (holding petitioner's failure to contend that sentencing judge did not take into account his youth in imposing 40-year sentence was fatal to his Eighth Amendment claim under *Miller*).

Nor does Plaintiff's complaint support his "de facto" life sentence claim. According to his allegations, Plaintiff will be eligible for release from his 40-year prison sentence at the age of 60. [29] at 13. Although no "precise metric governs" how long a sentence must be to be considered a *de facto* life sentence, the Seventh Circuit has repeatedly held that juveniles who would be first eligible for release in their late fifties, or even their seventies, did not receive *de facto* life sentences. *See Mitchell*, 2021 WL 1998237, at *8 (holding petitioner did not receive *de facto* life sentence where he would be eligible for release from his 40-year sentence at 57 years old) (citing *Kelly v. Brown*, 851 F.3d 686, 687 (7th Cir. 2017) (holding 16-year-old who would first be eligible for parole at 70 did not receive *de facto* life sentence)); *Sanders v. Ekstein*, 981 F.3d 637, 643 (7th Cir. 2020) (affirming conclusion that juvenile first eligible for release at age 51 did not receive *de facto* life sentence)); *see also Krol v. Calhoun*, No. 16-cv-11595, 2019 WL 5592757, at *14 (N.D. Ill. Oct. 30, 2019) (affirming conclusion that 35-year murder sentence resulting in release of juvenile offender at age 56 was not a *de facto* life sentence under *Miller*); *Johnson v. Brannon*, No. 16-cv-5373, 2021 WL 4146886, at *5 (N.D. Ill. Sept. 13, 2021) (holding defendant who was 21 when sentence was imposed and would be 61 when he completed his sentence did not receive a *de facto* life sentence).

18

In light of these precedents, Plaintiff cannot state a Cruel and Unusual Punishment claim under *Miller*. For this reason, and as more fully explained above, this Court grants Defendants' motion with respect to Count II.

## III. Conclusion

For the reasons described above, the Court grants Defendants' motion to dismiss without prejudice. [25]. Plaintiff may amend his complaint if he can, in good faith and consistent with Rule 11, set forth factual allegations sufficient to state a claim consistent with this Court's ruling and relevant law. Plaintiff shall file an amended complaint on or before April 15, 2024. If Plaintiff fails to file an amended complaint by this date, this case will be dismissed.

Dated: March 26, 2024                    Entered:

John Robert Blakey
United States District Judge